**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

HOLY TRINITY GREEK ORTHODOX )    No. CIV 04-1700-PHX-SMM
CHURCH, a non-profit organization, )
                      )    **ORDER**
        Plaintiff, Counter-Defendant, )
                      )
    vs.               )
                      )
CHURCH   MUTUAL   INSURANCE )
COMPANY, a foreign corporation, )
                      )
        Defendant, Counter-Claimant. )
_____ )

Pending before the Court are: 1) Defendant's Motion for Summary Judgment on Coverage Issues [Doc. No. 29]; 2) Defendant's Objection and Response to Plaintiff's Separate Statement of Facts and Motion to Strike Portions Thereof [Doc. No. 42]; 3) Plaintiff's Motion to Strike Portions of Defendants Statement of Facts and Declaration of James Bednarski [Doc. No. 34]; and 4) Plaintiff's Cross Motion for Partial Summary Judgement [Doc. No. 36]. After considering the arguments raised in the parties' briefs and asserted at oral argument, the Court issues the following Memorandum of Decision and Order.

## BACKGROUND

On July 29, 2004, Plaintiff filed a Complaint in the Superior Court for the County of Maricopa alleging the following four counts: 1) Count I: Breach of Contract; 2) Count II: Bad Faith; 3) Count III: Breach of the Covenant of Good Faith and Fair Dealing; and 4) Unfair Claim Settlement Practices.   On August 16, 2004, Defendant filed a Notice of Removal pursuant to 28 U.S.C. § 1332 [Doc. No. 1].

On October 25, 2004, Defendant filed a Motion to Dismiss Plaintiff's Count IV [Doc. No. 7] and Motion to Bifurcate and Stay the Extra-Contractual Claims [Doc. No. 8].  On March 29, 2005, the Court issued an Order [Doc. No. 21] dismissing Count IV and staying discovery on the extra-contractual claims.  Accordingly, Plaintiff's other claims for relief, such as bad faith or other contractual disputes are not before the Court at this time, as they have no affect on the coverages issues.

The Court will first address the parties' respective partial summary judgment motions before turning to the parties' respective motions to strike.

**SUMMARY JUDGEMENT**

**I. STANDARD OF REVIEW**

Upon motion at any time, a party defending against a claim may move for "partial summary judgment," that is, "summary judgment in the party's favor as to . . . any part thereof." FED. R. CIV. P. 56(b).  A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material.  See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.  The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24.  Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994).  The moving party

1  need not disprove matters on which the opponent has the burden of proof at trial.  See Celotex,

2  477 U.S. at 317.   The party opposing summary judgment "may not rest upon the mere

3  allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that

4  there is a genuine issue for trial."  FED. R. CIV. P. 56(e);  see Matsushita Elec. Indus. Co.

5  v.Zenith Radio, 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d

6  1044, 1049 (9th Cir. 1995).

7  **II. DISCUSSION**

8   As stated in the Court's Order dated March 29, 2005, the only issue currently before

9  Court, is whether the damage sustained by Plaintiff is covered under the Policy (as defined

10  below).   Accordingly, the Court must examine the Policy to determine: 1) whether Plaintiff's

11  uncompensated damage to the slab of the education building is "Covered Property" under the

12  Policy and 2) whether the damage to the slab (as characterized by Plaintiff) is a "Covered Cause

13  of Loss" under the Policy.

14   Both Plaintiff's and Defendant's respective summary judgment motions seek resolution

15  of the issue of coverage.  The Court will analyze the issue of coverage in the procedural context

16  of addressing Defendant's Motion for Summary Judgement on Coverage Issues and will view

17  the facts in the light most favorable to the Plaintiff.  See Celotex, 477 U.S. at 322-23.  The

18  Court's substantive discussion of the issue of coverage set forth below, however, addresses and

19  resolves both Plaintiff's and Defendant's respective summary judgment motions.

20   The Court finds the following material facts are undisputed:

21  •  Defendant issued Plaintiff an insurance policy for the period April 6, 2001 to April 6,

22   2004 (the "Policy").

23  •  On April 15, 2003, a water pipe broke and released between 60,000 and 80,000 gallons

24   of water into the education building owned by Plaintiff.

25  •  Plaintiff filed a formal insurance claim with Defendant, seeking coverage for the water

26   damage caused by the broken pipe.

27

28

1   •   Defendant has paid Plaintiff approximately $570,000 pursuant to a determination by an

2       arbitrator and the limit established by Form A 117.4 "Additional Coverages- Institutional

3       Income and Extra Expense."[1]

4   •   Plaintiff filed an additional claim for alleged damage to the slab and the subterranean

5       earth.

6   •   The Policy language addressing covered property provides in pertinent part:

**A. COVERAGE**

We will pay for direct physical loss of or damage to Covered
Property at the premises described in the Declarations Page caused
by or resulting from any Covered Cause of Loss.

1. Covered Property

Covered Property, as used in this Coverage Form, means the type
of property described in this section, A.1., and limited in A.2.,
Property Not Covered, if a limit of Insurance is shown in the
Declarations for that type of property.

2. Property Not Covered

Covered Property does not include: ...

d.  the cost of excavations, grading, backfilling or filling
e.  Foundations of buildings, structures, machinery, or boilers if
their foundations are below: (1) [t]he lowest basement floor; or (2)
[t]he surface of the ground, if there is no basement.

19  •   The Policy language addressing covered losses provides in pertinent part:

**A.  COVERED CAUSES OF LOSS**

When Special is shown in the Declarations Page,[2] Covered Causes
of Loss means Risks of Direct Physical Loss unless the loss is:
a.  Excluded in Paragraph B., Exclusions; or
b.  Limited in Paragraph C., Limitations.

that follow.

---

[1]   The parties dispute whether the payments were properly made and whether the Defendant has acted
in bad faith.  These issues are left to another day and have no bearing on the coverage issues that are currently
before the Court.

[2]   The Record indicates that "Special" is shown on the Declarations Page.

1

2

3      **B. EXCLUSIONS**

4

5      We will not pay for loss or damage caused directly or indirectly by
       any of the following.  Such loss or damage is excluded regardless
       of any other cause or event that contributes concurrently or in any
6      sequence to the loss.

7      ... b.  Earth Movement

8      (1) Any earth movement (other than "sinkhole collapse") such as
       an earthquake, landslide or earth sinking, rising, or shifting.  But
9      if earth movement results in fire or explosion, we will pay for the
       loss or damage caused by that fire or explosion.[3]

10

11          Plaintiff contends: 1)  that the water released from the broken pipe infiltrated the soil and

12     fill materials beneath the building and 2) that this infiltration of water caused the fill material

13     and soil to expand and that this expansion subsequently caused significant damage to the

14     building's slab.  While Defendant disputes these factual contentions, for the purpose of

15     addressing Defendant's Motion for Summary Judgment on Coverage Issues, Plaintiff's

16     characterization of how the damage occurred will be viewed in the light most favorable to

17     Plaintiff and will be considered to be true.  See Celotex, 477 U.S. at 322-23.

18          *A.  Covered Property*

19          As stated above, the Policy provides "We will pay for direct physical loss of or

20     damage to Covered Property at the premises described in the Declarations Page caused by or

21     resulting from any Covered Cause of Loss."  The Policy further states that: "Covered

22     Property, as used in this Coverage Form, means the type of property described in this

23     section, A.1, and limited in A.2.,  Property Not Covered, if a limit of Insurance is shown in

24     the Declarations for that type of property."  Section A.1 lists several types of covered

25     property but does not include the terms foundation or slab.  Section A.2, does however,

26

27     _____

28          [3]  The remaining definition of "Earth Movement" addresses volcanic eruptions.

                                    - 5 -

1   specifically state that Covered Property does not include: "the cost of excavations, grading,

2   backfilling or filling."

3          Plaintiff refutes Defendant's position that the cost of excavations, grading, backfilling

4   or filling is not "Covered Property" under the Policy with the following assertions:  1) the

5   excavation, backfilling and grading comprise only a small component of the cost to

6   demolish and rebuild the building and therefore a substantial amount of a covered loss

7   remains unpaid even if these costs are excluded; 2) the "Property Not Covered" limiting

8   clause is not only ambiguous but is "nonsensical" and should not be enforced; and 3) there is

9   no limit of insurance displayed on the Declarations Page thereby precluding enforcement of

10  the "Property Not Covered" section of the Policy.

11         *1.  Composition of Costs*

12         The Court finds that Plaintiff's argument that the costs for services (i.e. excavating,

13  backfilling, etc.) expressly excluded by the Policy constitute only a small portion of the total

14  costs incurred does not affect the precise issue of coverage before the Court.  Should the

15  Court find that the property destroyed was not "Covered Property" or the cause of Plaintiff's

16  loss was not a "Covered Cause of Loss" under the Policy and grant Defendant's Motion for

17  Summary Judgment on Coverage Issues, then the costs incurred will be irrelevant and the

18  Defendant would not be liable for any of the remaining costs.  Likewise, should the Court

19  find that summary judgment is not appropriate at this juncture or grant Plaintiff's Motion for

20  Partial Summary Judgment, the value of the loss would be a matter to be established at trial.

21         *2.  Contract Interpretation*

22         Plaintiff also contends that the "Property Not Covered" clause is not only ambiguous

23  but is "nonsensical" and should not be enforced.  "An Ambiguity exists when the language

24  of the policy is unclear or could be construed in more than one sense."  Roberts v. State

25  Farm Fire and Casualty Co., 705 P.2d 1335, 1337 (citing Sparks v. Republic Nat. Life Ins.

26  Co., 647 P.2d 1127, 1133 (Ariz. 1982)). Section A.2 of the Policy unequivocally states that

27  "Covered Property" does not include: "the cost of excavations, grading, backfilling or

28  filling."

1    Initially, the Court finds that after examining this language from the view point of an

2    ordinary individual and construing this language according to its plain and ordinary

3    meaning, no ambiguity exists.  See Millar v. State Farm Fire and Casualty, 804 P.2d 822,

4    825 (Ariz. Ct. App. 1990) (stating that insurance provisions are to be construed according to

5    their plain and ordinary meaning and noting that the language should be examined from the

6    viewpoint of one not trained in law or in the insurance business).

7    It is clear that "Covered Property" is a defined term and the Policy in question clearly

8    lists the covered forms of property under the heading "Covered Property" and also clearly

9    lists excluded forms of property under the heading "Property Not Covered."  Under Arizona

10   law, "[p]arties to an insurance agreement may contract for any lawful coverage, and the

11   insurer has the right to limit its liability by imposing conditions and restrictions on its

12   obligation" provided those restrictions are not inconsistent with public policy.[4]  Security Ins.

13   Co. of Hartford v. Andersen, 763 P.2d 246, 250 (Ariz. 1988).

14   The Court finds that Defendant has clearly and unambiguously set forth what

15   constitutes "Covered Property" and also clearly and unambiguously listed the "costs" at

16   issue in this case under the heading "Property Not Covered" in the Policy.  Accordingly, the

17   Court finds that Defendant's exclusion of the "costs" at issue here from the definition of

18   "Covered Property" was a permissible attempt to limit liability under Arizona law and does

19   not create any ambiguity.

20   *3.  Limit of Insurance*

21   Plaintiff also contends that there is no limit of insurance displayed on the

22   Declarations Page, thereby precluding enforcement of the "Property Not Covered" section of

23   the Policy.  Page one of the applicable Declarations Page states: "Blanket Limit of Insurance

24   is per Company File."  Page three of the Declarations Page, under the heading "Limit of

25   Insurance:" contains the following notation: "Blanket Coverage: Blanket No. 1: Building &

26

27        [4]The Court notes that the record is devoid of any evidence that Defendant's Policy limitations violate

28   public policy and that Plaintiff did not raise this issue in any of its pleadings or motions.

1   Personal Property."  The Court finds that the Declarations Page clearly states that a limit of

2   insurance exists and that the insurance provided under the Policy is limited to "Building &

3   Personal Property."

4        Accordingly, the Court finds that a limit of insurance is displayed on the Declarations

5   Page and the "Property Not Covered" section of the Policy is valid and enforceable.  The

6   Court further finds that the cost of excavating,  grading, backfilling or filling is not

7   "Covered Property" under the Policy.

8        **B.  Covered Cause of Loss**

9        Plaintiff does not dispute that "earth movement" is an excluded cause of loss under

10  the Policy.  Rather Plaintiff contends that: 1) the "earth movement" exclusion is ambiguous

11  and 2) the "earth movement" exclusion should be interpreted as excluding only movement

12  caused by natural phenomena or an act of God and not apply to the damage caused to

13  Plaintiff's slab in this case.

14       *1.  Earth Movement Exclusion is not Ambiguous*

15       Under Arizona law, "if an insurer wishes to limit liability, it must employ language

16  in the policy which clearly and distinctly communicates to the insured the nature of the

17  limitation." Roberts, 705 P.2d at 1337 (citing Sparks, 647 P.2d at 1133).  The Court of

18  Appeals has also stated that insurance provisions are to be construed according to the their

19  plain and ordinary meaning and noted that the language should be examined from the

20  viewpoint of one not trained in law or in the insurance business.  Millar, 804 P.2d at 826.

21  The Millar court also cautioned:  "[a] policy term is not ambiguous, however, merely

22  because one party assigns a different meaning to it in accordance with his or her own

23  interest."  Id.

24       The Arizona Court of Appeals has interpreted an "earth movement" exclusion and

25  found that the exclusion is not ambiguous.  Millar, 804 P.2d at 824-26.  Plaintiff, however,

26  urges the Court to disregard Millar and find that the term "earth movement" is ambiguous.

27  Plaintiff  relies on  State Farm Mut. Auto. Ins. Co. v. Wilson, 782 P.2d 727 (Ariz. 1989) for

28  the proposition that because a District Court in Virginia interpreted a similar "earth

1    movement" exclusion to apply only to natural phenomena that this Court must find that the

2    "earth movement" exclusion at issue here is ambiguous and applies only to natural to

3    phenomena.[5]  In Wilson, the Arizona Supreme Court stated: "...because two divisions of our

4    court of appeals have reached diametrically opposite conclusions based on essentially

5    identical wording, prior authority requires us to conclude that the clause must be

6    ambiguous." Id. at. 732.

7         This Court has not been presented with, nor did its own research reveal any authority

8    from this jurisdiction that contradicts the Court of Appeals' interpretation of the "earth

9    movement" exclusion in Millar.  Thus, two courts in this jurisdiction have not "reached

10   diametrically opposed conclusions" regarding the interpretation of an "earth movement"

11   exclusion.[6]

12        Furthermore, in Millar (which was decided eleven months after Wilson), the Court of

13   Appeals specifically recognized that other jurisdictions had found earth movement

14   exclusions to be ambiguous and limited to natural phenomena but then proceeded to find

15   that the clause before it was not ambiguous based on statutory interpretation principles

16   under Arizona law.   Millar, 804 P.2d at 824-25.

17        Based on the Supreme Court's more recent ruling in Wilson, and the even more

18   recent decision by the Court of Appeals in Millar, the Court finds that the existence of

19   differing interpretations of "earth movement" exclusions from foreign jurisdictions does not

20   dispose of the issue of ambiguity under Arizona law.

21   _____

22        [5]  The Court recognizes that the court in Sentinel interpreted almost the precise (one comma is in a
     different place) language of the exclusion that is at issue in this case and found that the language was ambiguous

23   and only applied to natural phenomena. Sentinel Assoc. v. American Manufacturers Mutual Ins. Co., 804 F.Supp.
     815, (E.D. Va. 1992).  In Sentinel, however, that court stated: "[t]aking the phrase in this context, and applying

24   the rule that ambiguities in such clauses must be resolved in favor of the insured ...."  Under Arizona law, the
     insured is not afforded such a favorable presumption.  See Wilson 782 P.2d at 733.

25

26        [6]  In Wilson, the Supreme Court cited Federal Ins. Co. v. P.A.T. Homes, Inc., 547 P.2d 1050, 1152-53
     (Ariz. 1976) (finding ambiguity where courts from different jurisdictions disagree on the interpretation of an

27   insurance clause) (overruled on other grounds by Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.,
     682 P.2d 388 (Ariz. 1984)), but based its conclusion that the clause was ambiguous on the differing

28   interpretations of the clause by two Arizona courts.

1        *2. The "Earth Movement" Exclusion is not Limited to Natural Phenomena*

2        Plaintiff focuses solely on the language "such as an earthquake, landside" and

3 contends that this language establishes that the "earth movement" exclusion should be

4 limited to natural disasters.  The Policy before the Court, however, prefaces the term "earth

5 movement" with "any" and then utilizes the disjunctive "or" after the examples of natural

6 disasters (i.e. earthquake and landslide) and before listing "earth sinking, rising, or shifting"

7 as further examples of the types "earth movement" that are excluded from coverage under

8 the Policy.

9        Plaintiff also argues that the "earth movement" exclusion in <u>Millar</u> was more

10 carefully drafted and contained words of limitation that the Policy before this Court does

11 not.[7]  While Plaintiff may be correct in noting that the drafters of the policy in <u>Millar</u> were

12 more deliberate, there is no indication in <u>Millar</u> or any other Arizona precedent that <u>Millar</u>

13 established a minimum drafting threshold for "earth movement" exclusions.

14        Accordingly, the Court finds that based on the plain language and sentence structure

15 it is clear that the "earth movement" exclusion is not limited to natural phenomena.

16        *3.  Concurrent Clause Exclusion*

17        The Court finds that the Policy contains the following concurrent clause exclusion:

18 "We will not pay for loss or damage caused directly or indirectly by any of the following.

19 Such loss or damage is excluded regardless of any other cause or event that contributes

20 concurrently or in any sequence to the loss."  In <u>Millar</u>, the court reiterated that Arizona has

21 never adopted the efficient proximate cause rule and found a similar concurrent clause

22 exclusion valid.  <u>Millar</u>, 804 P.2d at 826.

23        The Court finds that the phrase "[s]uch loss or damage is excluded regardless of any

24 other cause or event that contributes concurrently or in any sequence to the loss" read in

25 conjunction with the "earth movement" exclusion makes it clear that the Policy excludes

26

27 _____

28       [7] In <u>Millar</u>, the policy contained the words "expanding" and "subsidence" and prefaced the examples of natural disasters with the phrase "including but not limited to."

1   damage caused, either directly or indirectly, by "earth movement."  Thus, where as here, the

2   alleged damage was caused by "earth movement" where water infiltrated the ground, the

3   "earth movement" exclusion would still preclude coverage.

4           *4. The Wilson Factors*

5           The Court must now examine the "earth movement" exclusion before it under

6   applicable Arizona law. The Policy designates "earth movement" as an excludable cause of

7   loss and defines the term as: "any earth movement (other than "sinkhole collapse") such as an

8   earthquake, landslide or earth sinking, rising, or shifting."

9           Initially, the Court notes that even if it were to find the "earth movement" exclusion

10  was ambiguous, under Arizona law the Court cannot automatically construe the clause in

11  favor of the insured and find coverage exists.  Wilson, 782 P.2d at 733.  Rather, the Arizona

12  Supreme Court has stated:  "the rule in Arizona is that we construe a clause subject to

13  different interpretations by examining the language of the clause, public policy

14  considerations, and the purpose of the transaction as whole."  Id.

15          Applying the factors set forth in Wilson  to the "earth movement" exclusion at issue in

16  this case, the Court finds that the Policy clearly and distinctly communicates that "earth

17  movement" exclusion encompasses the damage alleged by Plaintiff and is not limited to

18  natural disasters or phenomena.

19          The Court also finds that Plaintiff has not argued in any of its pleadings or motions,

20  nor is their any evidence in the Record that the "earth movement" exclusion violates public

21  policy.  See FED. R. CIV. P. 56(e); Matsushita Elec. Indus. Co., 475 U.S. at 585-88 ; Brinson,

22  53 F.3d at 1049 (stating that the party opposing summary judgment "may not rest upon the

23  mere allegations or denials of [the party's] pleadings, but ... must set forth specific facts

24  showing that there is a genuine issue for trial").   Finally, the Court finds that the purpose of

25  the transaction was for the Plaintiff to purchase and the Defendant to sell insurance coverage

26  and that under Arizona law an attempt by an insurance company to limit liability is perfectly

27  permissible, understandable and to be expected. See Security Ins. Co. of Hartford v.

28  Andersen, 763 P.2d at 250. Accordingly, the Court finds that the "earth movement"

1  exclusion, when construed according to it plain and ordinary meaning, is not ambiguous, is

2  not limited to natural phenomena and is enforceable under Arizona law.

3      *C. Conclusion*

4      In <u>Millar</u>, the Court of Appeals cautioned, "[w]here the policy language is clear, a

5  court may not take the easy way out by inventing ambiguity, then resolving it to find

6  coverage where none exists under the policy." <u>Millar</u>, 804 P.2d at 824.  The Court finds that

7  the Policy clearly and unambiguously indicates that the cost of excavations, grading,

8  backfilling or filling is not "Covered Property" under the Policy.

9      Likewise, the Court also finds: 1) that the Policy clearly and distinctly communicates

10  that its "earth movement" exclusion encompasses Plaintiff's characterization of the damage to

11  its slab and is not limited to natural phenomena; 2) Plaintiff has failed to provide any

12  evidence that the earth movement exclusion violates public policy; 3) the dominant purpose

13  of the transaction was for the Plaintiff to purchase and the Defendant to sell insurance

14  coverage and that under Arizona law an attempt to limit liability by an insurance company is

15  not only permissible but is to be expected; and 4) the concurrent cause exclusion makes it

16  clear that the damage caused (either directly or indirectly) by "earth movement" is excluded

17  from coverage under the Policy.

18      Accordingly, the Court finds that even when Plaintiff's characterization of the cause of

19  the damage to its slab is viewed in the light most favorable to Plaintiff, there is no issue of

20  material fact as to the coverage issues addressed above.  Thus, Plaintiff's Motion for Partial

21  Summary Judgment is denied and Defendant's Motion for Summary Judgment on Coverage

22  Issues is granted.

23                    **<u>MOTIONS TO STRIKE</u>**

24      Plaintiff has filed a Motion to Strike Portions of Church Mutual's Statement of Facts

25  and Declaration of James Bednarski.  Defendant has also filed a Motion to Strike to Portions

26  of Plaintiff's Separate Statement of Facts.

27  **I. STANDARD OF REVIEW**

28

1    Evidence a party relies upon with respect to a summary judgment motion must have

2  an appropriate foundation and must be supported or opposed by admissible evidence.  Fed.

3  R. Civ. P. 56(e).  Inadmissible evidence is subject to a timely objection and may be stricken

4  from the record.  FDIC v. New Hampshire Ins. Co., 953 F.2d 478, 484 (9th Cir. 1991).

5  **II. DISCUSSION**

6    Initially, the Court notes that its review of the Record was limited to those items that

7  addressed the precise issue of whether the alleged damage to Plaintiff's slab is covered under

8  the Policy.

9    ***A.  Plaintiff's Motion***

10    Plaintiff's Motion requests that the Court strike Exhibits 1 and 2 of Mr. Bednarski's

11  declaration, paragraphs 4, 5, 7, 8 and 9 of that declaration, the corresponding cross-

12  referenced exhibits and paragraphs 11, 12, 13, 18, 27, 28, 29 and 30 from Defendant's

13  Statement of Facts.   Plaintiff asserts that: 1) the reports are neither authenticated nor sworn,

14  2) the reports are hearsay and 3) "in a vacuum" the reports constitute meaningless opinions.

15    The Court finds that Plaintiff has moved to strike items not considered by the Court in

16  conjunction with the parties respective summary judgment motions regarding the issue of

17  coverage.  Accordingly, Plaintiff's Motion to Strike is denied as premature.

18    ***B.  Defendant's Motion***

19    Defendant contends that portions Plaintiff's Separate Statement of Facts are irrelevant

20  and has filed a Motion to Strike portions thereof.  Again, the Court finds that Defendant has

21  moved to strike items not considered by the Court in conjunction with the parties respective

22  summary judgment motions regarding the issue of coverage.  Thus, Defendant's Motion to

23  Strike portions of Plaintiff's Statement of Facts is premature.  The Court also notes that the

24  Court reviewed the Policy contained in the Record thereby rendering Defendant's assertion

25  that Plaintiff misconstrued the words of the Policy in its statement of facts moot.

26    Accordingly, the Court denies both Plaintiff's and Defendant's respective Motions to

27  Strike.

28

1

## CONCLUSION

2

3      **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment on

4  Coverage Issues is hereby **GRANTED**.

5      **IT IS FURTHER  ORDERED** that Plaintiff's Motion for Partial Summary Judgment

6  is hereby **DENIED.**

7      **IT IS FURTHER  ORDERED** that Defendant's Motion to Strike is hereby

8  **DENIED.**

9      **IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike is hereby **DENIED.**

10

11      DATED this 4th day of January, 2006.

12

13

14                     Stephen M. McNamee
                 Chief United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28