**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **HOLY TRINITY GREEK ORTHODOX CHURCH, a non-profit organization,**<br><br>　　Plaintiff,<br><br>　vs.<br><br>**CHURCH MUTUAL INSURANCE COMPANY, a foreign corporation,**<br><br>　　Defendant. | No. CIV 04-1700-PHX-SMM<br><br>**MEMORANDUM OF DECISION AND ORDER** |

Pending before the Court is the Defendant Church Mutual Insurance Company's (Church Mutual) Motion for Partial Summary Judgment (Doc. No. 88) filed in accordance with Fed.R.Civ.P. 56. Church Mutual requests the Court to enter partial summary judgment against Plaintiff Holy Trinity Greek Orthodox Church (Holy Trinity), finding that Holy Trinity is not entitled to punitive damages. The parties have had the opportunity to submit evidence and briefing, and the Court would not find oral argument helpful in resolving this matter. Accordingly, the Court finds the pending motions for summary judgment suitable for decision without oral argument.[1] After considering the written arguments of the parties, the Court makes the following ruling.

---

[1] See LRCiv 56.2; LRCiv 7.2(f); Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp., 933 F.2d 724, 728-29 (9th Cir. 1991) ("When a party has an adequate opportunity to provide the trial court with evidence and a memorandum of law, there is no prejudice" when oral arguments are not held on motions for summary judgment.)

**BACKGROUND**

This case involves insurance claims made by Plaintiff Holy Trinity after a water pipe broke at Holy Trinity's education center on April 15, 2003. Defendant Church Mutual provided Holy Trinity with first-party property insurance coverage. Ultimately, Church Mutual paid to Holy Trinity the full appraisal amount, as well as the full claim for damages to personal property.

In its Complaint, Holy Trinity alleged the following claims: Breach of Contract (Count One), Bad Faith (Count Two), Breach of the Covenant of Good Faith and Fair Dealing (Count Three), and Unfair Claim Settlement Practices (Count Four)[2]. This matter was removed from Maricopa County Superior Court on August 16, 2004.

Currently before the Court is Church Mutual's Motion for Partial Summary Judgment as to Punitive Damages. Church Mutual argues that there is "simply no basis given the facts of this case to find that Church Mutual 'was guided by evil motives or willful or wanton disregard of the interests' of its insured." *Saucedo v. Salvation Army*, 200 Ariz. 179, 182 (App. 2001) (*quoting Piper v. Bear Med. Sys. Inc*., 180 Ariz. 170, 180(App. 1993). The Court proceeds to address the arguments pertaining to punitive damages advanced by the parties.

**STANDARD OF REVIEW**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nevada Federal Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also Jesinger*, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit

---

[2] The Breach of Contract claim relating to Holy Trinity's claim for structural damages due to earth movement (Count One) and Holy Trinity's claim for Unfair Claim Settlement Practices (Count Four) have been dismissed, but are not appealable at this time. Church Mutual contends that there are no further breach of contract claims involved in the case; however, Holy Trinity contends that Count One (other than slab damage) is still pending.

under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Jesinger,* 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322; *see also Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. *See Celotex*, 477 U.S. at 323-24. The party opposing summary judgment need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." Id. at 324. However, the nonmovant "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88 (1986); *Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1049 (9th Cir. 1995).

## DISCUSSION

**A.  Admissibility of Certain Evidence**

As a preliminary matter, the Court must consider the admissibility of certain evidence offered by Plaintiff. Although Defendant has not filed a separate and formal motion to strike, they have objected to the admissibility of certain testimony which was advanced by Plaintiff in an attempt to show that Defendant acted with the requisite evil mind to substantiate a claim for punitive damages. Because the Court can only consider admissible evidence in ruling on a motion for summary judgment, see Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002), and the evidence at issue is critical to the determination of Plaintiff's attempt to prove an entitlement to punitive damages, the Court will proceed to evaluate the admissibility of this evidence even without a formal motion to strike by Defendant.

1  Specifically, Church Mutual objects to Mr. Speros' opinions[3] pertaining to insurance
2  claims handling matters (Doc. 111, Ex. B) on the grounds that they constitute inadmissible
3  expert and or lay opinion testimony, in violation of Fed.R.Evid. 602, 701, 702, 703, and 705.
4  Holy Trinity has not disclosed Mr. Spero as an expert witness, nor provided Church Mutual
5  with information regarding Mr. Speros' opinions, as required by Fed.R.Civ.P. 26(a)(2).
6  Moreover, Church Mutual contends that Mr. Speros' opinion testimony necessarily involves
7  information that he has obtained from other people, thereby constituting inadmissible hearsay
8  evidencefor which there is no exception, in violation of Fed.R.Evid. 801-02. Holy Trinity has
9  failed to respond to Church's objection.

**1.    Improper Opinion Testimony**

As a witness, Mr. Speros is entitled to testify concerning facts about which he has first hand knowledge. It is undisputed that Mr. Speros does not now and never has worked for Church Mutual. Accordingly, none of Mr. Speros' testimony pertaining to the reasonableness and adequacy of the investigation by Church Mutual, the legitimacy of Church Mutual's reasons for its conduct, and the ususal conduct of insurance companies is based on first hand knowledge, as required by Fed.R.Evid. 602. Therefore, Mr. Speros' testimony is only admissible if it constitutes proper opinion testimony under Fed.R.Evid. 701, 702, 703, and 705. The testimony in question pertains to matters that are not within the ordinary knowledge of the lay person.[4] Thus, it necessarily follows that in order for Mr. Speros' opinion testimony regarding such technical or specialized matters to be admissible, first it must constitute proper expert opinion testimony under Fed.R.Evid. 702, 703, and 705. The record demonstrates that Mr. Speros (1) has no relevant training or experience, (2) has not detailed the basis for his opinions and conclusions, and (3) has not established that his opinions and conclusions are

---

[3] The opinions expressed in paragraphs 15, 18, 22, 24, 36, 42, 68, and 69 of Mr. Speros' Affidavit (Doc. 111, Ex. B) are currently at issue.

[4] Mr. Speros' opinion testimony involves matters based on technical or specialized knowledge which is not proper for lay opinion testimony. Fed.R.Evid.701.

- 4 -

1  based on data that is reasonably relied upon by experts in the field of insurance claims handling
2  practices. Furthermore, Mr. Speros' opinions were not properly disclosed pursuant to
3  Fed.R.Civ.P. 26(a). Consequently, Mr. Speros is not an expert witness and the objection is
4  **SUSTAINED on these grounds.**

    **2.    Inadmissible Hearsay**

6  Defendant contends that because Mr. Speros is expressing opinions in paragraphs 15, 18,
7  22, 24, 36, 42, 68, and 69 of his affidavit, his testimony is necessarily based, in whole or in part,
8  on information that was provided to him by others, thereby constituting inadmissible hearsay,
9  in violation of Fed.R.Evid. 801-802. Hearsay is "a statement, other than one made by the
10 declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the
11 matter asserted." Fed.R.Evid. 801. Here, it is evident from the briefing that Mr. Speros'
12 testimony is offered to show the proof of the matter stated. Therefore, because the affidavit
13 testimony contains out of court statements and because it does not fit into a hearsay exception,
14 Defendant's objection is hereby **SUSTAINED on this ground**.

**B.    The Standard for Proving Punitive Damages in Arizona**

16 Defendant argues that it is entitled to summary judgment as to Plaintiff's punitive
17 damages claim because Plaintiff is unable to establish that Defendant acted with the requisite
18 intent to substantiate such a claim. Defendant contends that even if the conduct of Church
19 Mutual Insurance Company in allegedly "failing to give as much consideration to the interests
20 of its insured, Holy Trinity, as it gave to its own interests" (Complaint ¶ 17) supports a cause
21 of action for bad faith, which it does not concede, this conduct itself remains insufficient for a
22 punitive award.

23 In a bad faith tort case against an insurance company, punitive damages may only be
24 awarded if the evidence reflects "something more" than the conduct necessary to establish the
25 tort. Rawlings v. Apodaca, 726 P.2d 565, 576 (Ariz. 1986). In Rawlings, the Arizona Supreme
26 Court explained the parameters of punitive damages as follows:

> We restrict [the availability of punitive damages] to those cases in which the defendant's wrongful conduct was guided by evil motives. Thus, to obtain punitive damages, plaintiff must prove that defendant's evil hand was guided by

> an evil mind . . . [P]unitive damages will be awarded on proof from which the jury may find that the defendant was 'aware of and consciously disregard[ed] a substantial and unjustifiable risk that' significant harm would occur.

726 P.2d at 578 (citations omitted).

"In deciding whether punitive damages are awardable, the inquiry should be focused on the wrongdoer's mental state." Linthicum v. Nationwide Life Ins. Co., 723 P.2d 675, 679 (Ariz. 1986). Punitive damages must be proved by "clear and convincing evidence of the defendant's evil mind." Id. at 681.

According to the Arizona Supreme Court, that requisite "something more" or "evil mind" is established by evidence that the defendant: (1) intended to cause injury; (2) engaged in wrongful conduct motivated by spite or ill will; or (3) acted to serve its own interests, having reason to know and consciously disregarding a substantial risk that its conduct might significantly injure the rights of others, even though defendant had neither desire nor motive to injure. Bradshaw v. State Farm Mut. Auto Ins. Co., 758 P.2d 1313, 1324 (Ariz. 1988).

"Of course, the required evil mind may be established by defendant's express statements or inferred from defendant's expressions, conduct, or objectives." Gurule v. Illinois Mut. Life and Cas. Co., 734 P.2d 85, 87 (Ariz. 1987) (citations omitted). An inference of evil mind may be drawn by a jury, if the defendant deliberately continued actions even though inevitable or highly probable harm would follow. Id. "While any single piece of evidence, taken alone, might not be clear and convincing evidence of an 'evil mind,' several such pieces of evidence, taken together, might clear the evidentiary hurdle." Thompson v. Better-Bilt Aluminum Products Co., Inc., 832 P.2d 203, 211 (Ariz. 1992).

Summary judgment on the issue of punitive damages must be denied if a reasonable jury could find the requisite evil mind by clear and convincing evidence; summary judgment should be granted if no reasonable jury could find the requisite evil mind by clear and convincing evidence. Thompson, 832 P.2d at 211. The court should construe the evidence and all reasonable inferences drawn from the evidence in a light most favorable to the non-moving party. Id.

1       To obtain summary judgment on the punitive damages issue in the instant case, Defendant must show there is a complete failure of proof, Celotex, 477 U.S. at 323, such that no reasonable jury could find the requisite evil mind by clear and convincing evidence. Thompson, 832 P.2d at 211 (Ariz. 1992).

        The Court finds it noteworthy to point out that Church Mutual ultimately paid the appraisal award for repair and remedial work involved in this case. Notwithstanding that fact, Plaintiff sets forth the following allegations justify an award of punitive damages, or at least raise a genuine issue of material fact that should reserve the issue for a jury: Church Mutual Insurance (1) did not use generally accepted procedures in drying out the facility when the damage was first done, instead it used a cost minimizing procedure; (2) did not use trained personnel in this type of independent adjusting; (3) hid reports and testing results that were produced by its experts and/or did not timely share them with its insured despite its obligation to do so; (4) hid from its insured potential life threatening situations concerning moisture flowing from the ground into the facility when the air conditioning was turned on, which could result in the creation of more mold; (5) did not advise Holy Trinity directly of the threat of asbestos; advising Holy Trinity that the facility was safe when Church Mutual actually had in its possession tests indicated the presence of mold; and (6) delayed the production of pertinent documents (electronic notebook) in discovery and may have altered the documents. (Doc. 110). The Court will consider these in turn.

        First, Plaintiff avers that the Defendant impermissibly put its own interests ahead of the interests of Holy Trinity by (1) not using generally accepted procedures in drying out the facility when the damage was first done, instead using a process to minimize its own costs; and (2) not using personnel trained in this type of independent adjusting. The Court finds this assertion to be based on inadmissible evidence. However, even assuming the evidence to be admissible, the Court finds that even if a jury could conclude from the disputed facts surrounding the investigation and the drying out/removal process that the insurance company attempted to minimize costs by using an alternate drying out procedure, and that the adjuster was not trained in the specific type of independent adjusting, such an inference would merely support a

possible finding of negligence or bad faith. It is axiomatic under Arizona law that punitive damages may only be awarded if evidence reflects "something more" than the conduct necessary to establish the tort of bad faith against insurance company. Rawlings, 726 P.2d at 576. Plaintiff would need to advance facts additional to those supporting a finding of negligence or bad faith to prove that the conduct was "willful and knowing," such as evidence of "[d]eliberate, overt and dishonest dealings." See Farr, 699 P.2d at 383. Here, Church Mutual investigated Holy Trinity's water damages the day it was reported, immediately evaluated the loss, and undertook remedial measures that are standard in the industry. The Court finds that Holy Trinity has failed to put forth sufficient evidence to indicate that such conduct was driven by an evil mind.

Next, Plaintiff set forth a narrative of facts which, it purports, supports an inference that Defendant acted with an "evil mind" when it allegedly (1) withheld testing results that were produced by its experts and/or did not timely share them with its insured, despite its alleged obligation to do so; (2) hid from its insured potential life threatening situations concerning the use of the air conditioning unit and resulting moisture flowing from the ground into the facility which could result in the increased development of mold spores; (3) failed to advise Holy Trinity directly of the threat of asbestos; (4) advised Holy Trinity that the facility was safe when Church Mutual had in its possession information that indicated the presence of mold.

With regard to Plaintiff's contention that Church Mutual failed to warn Holy Trinity that its building might have asbestos, there is no evidence that there was in fact any asbestos in the education center. Further, it is undisputed that Mr. Kemp, an independent insurance adjuster, was notified that there was a possibility that the floor tile in the building had asbestos. According to Mr. Kemp, he mentioned this to Church Mutual merely to warn them in cases Holy Trinity raises the issue later in the future. Allen Environmental, Holy Trinity's own expert, did not find any asbestos upon examination of the building and ultimately Holy Trinity

1 never claimed that asbestos really existed in the floor tile.[5]  Holy Trinity also alleges that
2 Church Mutual "hid potential life threatening situations concerning moisture flowing from the
3 ground into the facility when the air conditioning was turned on which could create mold."
4 Defendant counters by asserting that there is no evidence that Church withheld any information
5 about the air conditioner with the intent to harm or with reckless disregard for Holy Trinity's
6 interests.  In fact, an expert retained by Church Mutual merely advised that he was concerned
7 that if Church Mutual turned the air conditioner on, Holy Trinity might accuse Church Mutual
8 of spreading mold spores to other places.  However, the expert explained that the concern was
9 preliminary and not in any way proved yet.  In addition, the Court finds that because there has
10 not been anyone working or otherwise conducting business in the building for over a year when
11 this occurred, the situation did not rise to the level of life threatening and the evidence lacks the
12 requisite finding of evil mind.  The Court finds that given the evidence, there is no clear and
13 convincing indication that Defendant acted with an evil mind when it failed to discuss the
14 possibility of asbestos existing in tiles in the education building or the fact that the use of the
15 air conditioning might spread mold spores.

16 Plaintiff alleges that Mr. Spero, its representative, attempted to obtain the results of the
17 mold tests from Hutzel and Associates, the mold experts, on many occasions.  In April of 2003,
18 Holy Trinity noticed visible mold growth in the education building, which was used to provide
19 services to elderly members and children.  At the same time, Church Mutual had the mold tests
20 done.  Despite the fact that there was visible mold, Mr. Links told the Church employees that
21 there was "no reason" to leave the building.  Notwithstanding the possibility of inaccuracy in
22 Mr. Links' statement, Plaintiff must assert facts to illustrate an **evil mind**.  Plaintiff has merely
23 asserted facts that may give rise to ordinary tort claims. However, Plaintiff has failed to
24 substantiate the punitive damages claim with facts indicating evil mind.  In fact, in his affidavit,
25 Mr. Speros referred to the incident wherein Mr. Links' told workers that the condition of the

---

27/28  [5]Further, Mr. Spero constructed the building and therefore knew or should have known that they type of material used might contain asbestos.

- 9 -

building was "okay" as "uninformed" or "misleading assurances". "Uninformed' and "misleading" do not evoke feelings of spite, ill will, reckless disregard, or any indication of evil mind.

Finally, Holy Trinity argues that Church Mutual altered the notes its claims representative entered into Church Mutual's electronic database. Plaintiff contends that such conduct gives rise to the inference of impropriety on the part of Church Mutual. However, according to Defendant, the updated information that Holy Trinity speculates may be altered information, merely represents the last date a particular claims representative entered information into the electronic notes computer system. This contention is supported by the depositions of each claims representative deposed on this matter. Once again, the Court finds that these facts do not illustrate a clear and convincing finding of "evil mind" and therefore do not substantiate a claim for punitive damages against the Defendant under Arizona law.

## **CONCLUSION**

Despite the fact that the parties in this case had a bona fide dispute as to the amount of Plaintiff's water damage claim, such a dispute does not automatically give rise to a claim of punitive damages. To establish a claim for punitive damages, Plaintiff must demonstrate by clear and convincing evidence, that Defendant acted with the requisite "evil mind". Here, Plaintiff was unable to do so; the evidence did not support a showing that Defendant (1) intended to cause injury; (2) engaged in wrongful conduct motivated by spite or ill will; or (3) acted to serve its own interests, having reason to know and consciously disregarding a substantial risk that its conduct might significantly injure the rights of others, even though defendant had neither desire nor motive to injure. Bradshaw v. State Farm Mut. Auto Ins. Co., 758 P.2d 1313, 1324 (Ariz. 1988). Therefore, Defendant's Motion for Partial Summary Judgment as to Punitive Damages is hereby **GRANTED**.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant's Motion for Partial Summary Judgment as to the request for punitive damages (Doc. 88) is hereby **GRANTED.**

DATED this 5th day of March, 2007.

_____
Stephen M. McNamee
United States District Judge